UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

BERTHA GREENE, individually and on behalf
of all others similarly situated,

                        Plaintiff,

          - against -

CLEAN RITE CENTERS, LLC and
LAUNDROMAX NEW ENGLAND, LLC,
                     Defendants.
------------------------------------------------------x

**<u>MEMORANDUM & ORDER</u>**
22-CV-1750 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Bertha Greene ("Plaintiff") brings this action on behalf of herself and similarly situated individuals who possess reloadable cash cards ("Laundry Cards") provided by Defendants Clean Rite Centers, LLC and LaundroMax New England, LLC (collectively, "Defendants") for use in laundry machines in laundromats operated by Defendants. Plaintiff alleges that Defendants' policies concerning the Laundry Cards are deceptive and asserts claims against Defendants for violations of Massachusetts's and New York's respective consumer deception statutes, as well as for unjust enrichment. Defendants move to dismiss Plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, Defendants' motion is granted as to Plaintiff's New York law and unjust enrichment claims; however, Plaintiff's unfairness claim under Massachusetts law may proceed, provided that Plaintiff sufficiently alleges subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), in her Second Amended Complaint.

## BACKGROUND

I.      **Factual Allegations[1]**

       A.      **The Parties**

Defendant Clean Rite Centers, LLC ("Clean Rite") is a New York limited liability company with its principal place of business in New York that operates laundromats throughout the United States.  (FAC, Dkt. 11, ¶ 33.)  Clean Rite is the parent company of Defendant LaundroMax New England, LLC ("LaundroMax New England"), a Massachusetts limited liability company with its principal place of business in New York.  (*Id*. ¶ 34.)  Defendants sell Laundry Cards that are designed to be used in laundry machines that are provided and serviced by Defendants at Defendants' laundromats.  (*Id.* ¶ 1.)

Plaintiff Bertha Greene is a citizen of Massachusetts.  (*Id.* ¶ 32.)  Plaintiff has an unusable Laundry Card that contains a balance of less than $5 that is inaccessible and not refundable due to Defendants' policies.  (*Id.*)  Plaintiff seeks to represent a class defined as all persons in the United States who possess Laundry Cards provided by Defendants (the "Class").  (*Id.* ¶ 39.)  Plaintiff also seeks to represent a subclass of all Class members who reside in Massachusetts (the "Massachusetts Subclass").  (*Id.* ¶ 40.)

       B.      **The Alleged Deceptive Scheme**

Defendants operate laundromats around the country.  (*Id.* ¶¶ 1, 33.)  Customers must pay to use Defendants' washers and dryers in amounts that vary depending on the size of the machine.  (*Id.* ¶ 9.)  Prices are currently set at $5.59, $7.59, $11.49, and $16.99 per load, but "are subject to change at Defendants' whim."  (*Id.*)

---

[1] The factual allegations are drawn from Plaintiff's FAC and, for the purposes of this motion, the Court assumes their truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Customers must purchase a refillable Laundry Card in order to use Defendants' laundry machines. (*Id.* ¶ 1). A new Laundry Card can be purchased for $3 at LaundroMax Card Stations ("Card Stations"), and customers can refill their Laundry Card thereafter using either cash or credit, but not coins. (*Id.* ¶¶ 3, 5–6.) Customers paying with a credit card can add money only in increments of $10, and the maximum amount of money permitted on one Laundry Card is $80. (*Id.* ¶¶ 7–8.) All funds added to Laundry Cards are non-refundable, but this fact is not revealed to customers until after they purchase the card, if at all. (*Id.* ¶¶ 12–13.)

Plaintiff alleges that she possesses an unusable Laundry Card with a balance of less than $5 that is inaccessible and non-refundable due to Defendants' policies. (*Id.* ¶ 32.) The costs of using Defendants' machines combined with the possible Laundry Card refill amounts do not allow customers to fully utilize the money they add to their cards. (*Id*. ¶ 11.) In other words, Plaintiff alleges Defendants intentionally set the possible refill amounts and costs of using the machines at rates that guarantee customers' Laundry Cards will never reach a balance of zero. (*Id.* ¶¶ 11, 14.) Any remaining balance on the Laundry Card is non-refundable, and because that policy is not revealed until after purchase (if ever), the remaining balances function as "hidden fees" that are not disclosed to customers. (*Id.* ¶¶ 12–18.) As such, Plaintiff was not aware that she would be unable to use or otherwise access the entirety of her balance when she purchased her Laundry Card. (*Id.* ¶ 32.)

Plaintiff alleges Defendants have distributed millions of Laundry Cards throughout the country and, as a result of their deceptive policies, have acquired millions of dollars in revenue to which they are not entitled. (*Id.* ¶ 30.) The FAC incorporates two postings from the website "Yelp.com" which show Defendants' customers complaining about being similarly deceived by the Laundry Card policies. (*Id.* ¶¶ 28–29.)

For its part, LaundroMax's website states that "Laundromax has completely transformed the laundry experience for discerning customers looking for efficiency, savings and superior customer service." (*Id.* ¶ 27.)  The website also states that "[a]ny claim relating to [the] Company's web site shall be governed by the laws of the State of New York without regard to its conflict of law provisions."  (*Id.* ¶ 77.)[2]

### C.    Jurisdiction and Venue

Plaintiff asserts that this Court has subject matter jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), "because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member (Plaintiff) is a citizen of a state different from Defendants" (FAC ¶ 36).[3] Plaintiff maintains that the Court has personal jurisdiction over Defendants because Defendants' principal place of business is within this District (*id.* ¶ 38), and that venue is proper pursuant to 28 U.S.C. § 1391 for the same reason the Court has personal jurisdiction and because a "substantial portion of the events that gave rise to this cause of action occurred here" (*id.* ¶ 37).

## II.    Procedural History

On March 29, 2022, Plaintiff filed a complaint against Defendants seeking individual and class-based relief.  (Complaint, Dkt. 1, ¶ 27.)  On June 1, 2022, Defendants requested a pre-motion conference ("PMC") regarding an anticipated motion to dismiss for lack of subject matter

---

[2] As discussed in more detail below, *see infra* at 18–19, there are no allegations that Plaintiff visited the website prior to purchasing a Laundry Card or that she purchased a Laundry Card through the website.  Accordingly, the Court finds that the choice of law provision is inapplicable to Plaintiff's claims.  *See id.*

[3] The Court *sua sponte* questions whether this action, as limited to Plaintiff's claim under Massachusetts law, meets the threshold amount in controversy.  Accordingly, the Court orders additional briefing on whether subject matter jurisdiction still exists.  *See infra* at 25.

jurisdiction and for failure to state a claim upon which relief could be granted. (Dkt. 9 at 1.)  After Plaintiff indicated that she intended to file an amended complaint (*see* Dkt. 10), the Court denied Defendants' PMC request without prejudice to renew (*see* 6/13/2022 Docket Order).

On June 21, 2022, Plaintiff filed the operative First Amended Complaint, which asserts claims against Defendants for: (1) violations of Massachusetts General Law Chapter 93A (Count One); (2) unjust enrichment (Count Two); and (3) violations of New York General Business Law Section 349 (Count Three). (*See generally* FAC.)  Plaintiff brings Count One against Defendant Clean Rite on behalf of herself and members of the Massachusetts Subclass, and against Defendant LaundroMax New England on behalf of herself and members of the Class and the Massachusetts Subclass. (*Id.* ¶¶ 47–48.)  Plaintiff brings Counts Two and Three against Defendants on behalf of herself and members of the Class and the Massachusetts Subclass. (*Id.* ¶¶ 64, 70.)

On July 5, 2022, Defendants filed a second PMC request regarding an anticipated motion to dismiss the FAC. (*See* Dkt. 12.)  The Court granted Defendants' request (*see* 7/25/2022 Docket Order) and held a PMC with the parties on August 16, 2022 (*see* 8/16/2022 Min. Entry).  At the conference, the Court set a briefing schedule for Defendants' motion. (*Id.*)  The motion was fully briefed as of October 28, 2022. (*See* Dkts. 19–21.)  Notably, Defendants' Motion to Dismiss the FAC argues only failure to state a claim under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), and not lack of subject matter jurisdiction under FRCP 12(b)(1).[4] (*See* Dkt. 19 at 1.)

## STANDARD OF REVIEW

To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v.*

---

[4] Defendants appear to have abandoned the jurisdictional arguments raised in their PMC letters. (*See* Dkt. 9 at 1–2; Dkt. 12 at 1–2.)

*Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).  The pleading standard does not require detailed factual allegations, but still "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021) (citation omitted).

**DISCUSSION**

Plaintiff asserts claims against Defendants for violations of Massachusetts General Law Chapter 93A ("Chapter 93A") and New York General Business Law Section 349 ("Section 349"), as well as for unjust enrichment.  (*See generally* FAC.)  Defendants move to dismiss the FAC on the basis that it fails to plausibly allege violations of Chapter 93A and Section 349.  (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), Dkt. 19-1, at 2.)  Defendants also move to dismiss Plaintiff's unjust enrichment claim as duplicative.  (*Id.*)  For the reasons discussed below, the Court dismisses Plaintiff's Section 349 claim (Count Three) and unjust enrichment claim (Count Two), but finds that Plaintiff's Chapter 93A unfairness claim (Count One) may proceed if Plaintiff can sufficiently allege subject matter jurisdiction.

6

I.      **Plaintiff's Chapter 93A Claim Under Massachusetts Law**

Plaintiff contends that Defendants violated Chapter 93A by engaging in "unfair or deceptive acts or practices in the conduct of trade or commerce." (FAC ¶ 52.) Plaintiff first argues that Defendants' no-refund policy violates the Massachusetts Gift Certificate Statute (the "Gift Certificate Statute"), Mass. Gen. Laws ch. 200A, § 5D, which in turn amounts to a violation of Chapter 93A. (*See* FAC ¶¶ 55–57; *see also* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mem."), Dkt. 21, at 7–8.) Plaintiff also argues that Defendants' failure to disclose their policies regarding their Laundry Cards is unfair and/or deceptive under Chapter 93A even absent a violation of the Gift Certificate Statute. (*See* FAC ¶¶ 52–54; *see also* Pl.'s Mem. at 8–9.) Defendants argue that Plaintiff's Chapter 93A claim must be dismissed because the Laundry Cards are not encompassed by the Gift Certificate Statute and "because the FAC does not contain allegations of 'unfair or deceptive acts.'" (Defs.' Mem. at 6.)

A.      **Legal Standard**

Chapter 93A "is a broad consumer protection statute that provides a private cause of action for a consumer who 'has been injured,' by 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 6 (1st Cir. 2017) (citations omitted) (first quoting Mass. Gen. Laws ch. 93A, § 9(1); and then quoting *id.* § 2(a)). To state a claim under Chapter 93A, a consumer must allege: "(1) a deceptive [or unfair] act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 245 (D. Mass. 2018) (internal quotation marks and citation omitted). The statute itself does not define what it means for an act or practice to be "deceptive" or "unfair," but "provides that courts 'will be guided' by the [Federal Trade Commission's (the

"FTC") and federal courts' interpretations of the provisions of the FTC Act that also proscribe unfair or deceptive acts or practices." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 70 (1st Cir. 2020) (quoting Mass. Gen. Laws ch. 93A, § 2(b)).

"As each of [C]hapter 93A's constituent parts is itself distinct, a [C]hapter 93A claim may be predicated on an underlying claim of unfair methods of competition, unfair acts or practices, or deceptive acts or practices." *Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 676 (1st Cir. 2017) (citing *Serv. Publ'ns, Inc. v. Goverman*, 487 N.E.2d 520, 527 (Mass. 1986) ("The jury could have found [the defendant's] business practices to be unfair without being deceptive or fraudulent.")).  Courts have interpreted "deceptive" to mean "'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Tomasella*, 962 F.3d at 70 (quoting *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016)).  And "an act or practice is unfair if it falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers." *Walsh*, 821 F.3d at 160 (internal quotation marks omitted) (quoting *PMP Assocs. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975)).  Moreover, "[t]o rise to the level of an unfair act or practice, the defendant's conduct must generally be of an egregious, non-negligent nature." *Id.* (internal quotation marks omitted).

The statute "also authorizes the Massachusetts Attorney General to issue rules and regulations interpreting [its] provisions, so long as the interpretations stay within the bounds set by the FTC's and federal courts' interpretations . . . ." *Tomasella*, 962 F.3d at 71 (citing Mass. Gen. Laws ch. 93A, § 2(c)).  One such regulation, Section 3.16(3), provides that "an act or practice is a violation of [Chapter 93A] if . . . [i]t fails to comply with existing statutes, rules, regulations

or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection." 940 Mass. Code Regs. 3.16(3); *see also Searle v. Nationstar Mortg., LLC*, 618 F. Supp. 3d 2, 15 (D. Mass. 2022) ("[A]n act is a per se violation of Section 93A if it 'fails to comply with existing statutes, rules, regulations or laws . . . intended to provide the consumers of this Commonwealth protection.'" (quoting 940 Mass. Code Regs. 3.16)). Subsection two of Section 3.16, states that an act or practice violates Chapter 93A if "[a]ny person or other legal entity subject to [the statute] fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." Mass. Code Regs. 3.16(2); *see also V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 416 (1st Cir. 1985). *But see Tomasella*, 962 F.3d at 77–78 (explaining that "Section 3.16(2) cannot be fairly read as a carte blanche for Chapter 93A liability").

### B.   Violation of the Massachusetts Gift Certificate Statute

Plaintiff argues that Defendants' policies are unfair or deceptive under Chapter 93A because they fail to comport with the Gift Certificate Statute. (*See* FAC ¶ 55; *see also* Pl.'s Mem. at 7–8 (citing 940 Mass. Code Regs. 3.16[5]).) The Gift Certificate Statute states:

> A purchaser or holder of a gift certificate which, by its terms, authorizes the purchaser or holder to add value thereto and which has been redeemed in part, such that the value remaining is $5.00 or less, shall make an election to receive the balance in cash or continue using the gift certificate.

Mass. Gen. Laws ch. 200A, § 5D. Plaintiff alleges Defendants' policies violate the Gift Certificate Statute because they "authorize the purchaser or holder to add value to Defendants' Laundry Cards and after being redeemed in part, such that the value remaining is $5.00 or less, do not allow

---

[5] The Court notes that the FAC does not cite to or otherwise mention 940 Mass. Code Regs. 3.16.

purchasers or holders to make an election to receive the balance in cash or continue using the gift certificate."  (FAC ¶ 55; *see also id.* ¶ 26; Pl.'s Mem. at 7 ("Plaintiff alleges that LaundroMax, by withholding the Laundry Card refunds, has per se violated [the Gift Certificate Statute], and thus, in turn, Defendants have committed an unfair practice in violation of [Chapter 93A].")) Defendants argue that this theory of liability fails because the Laundry Cards are not "gift certificates" under the statutory definition.  (*See* Defs.' Mem. at 6–9; Defs.' Reply in Supp. of Mot. to Dismiss, Dkt. 20, at 3.)

Massachusetts law defines a "gift certificate" as "a writing identified as a gift certificate purchased by a buyer for use by a person other than the buyer not redeemable in cash and usable in its face amount in lieu of cash in exchange for goods or services supplied by the seller."  Mass. Gen. Laws ch. 255D, § 1.  To qualify as a "gift certificate," a writing must be: (1) "identified as a gift certificate"; (2) "purchased by a buyer for use by a person other than the buyer"; (3) "not redeemable in cash"; and (4) "usable in its face amount in lieu of cash in exchange for goods or services supplied by the seller."  *Commonwealth v. Simon Prop. Grp., Inc.*, No. 04-4993-BLS2, 2008 WL 4965853, at *2–3 (Mass. Super. Ct. Oct. 27, 2008) (quoting Mass. Gen. Laws ch. 255D, § 1).  "[A]n item must meet all four [elements] to be within the definition."  *Id* at *3*.

The Court agrees with Defendants that Plaintiff has failed to plausibly allege the Laundry Cards are gift certificates within the meaning of the statute.[6]  (*See* Defs.' Mem. at 6–9.) Specifically, there are no allegations that the Laundry Cards are "purchased by a buyer for use by a person other than the buyer."  Mass Gen. Laws ch. 255D, § 1.  To the contrary, the FAC indicates

---

[6] The parties also dispute Plaintiff's obligation to establish that her Laundry Card is "a writing identified as a gift certificate."  (*See* Defs.' Mem. at 8; Pl.'s Mem. at 5–6.)  The Court need not address this dispute because, as discussed above, Plaintiff's allegations under the Gift Certificate Statute fail under the second element of the statutory definition.

that Plaintiff purchased the Laundry Card for her own use, not as a gift for someone else.  (*See* FAC ¶ 32 ("Plaintiff Greene was not aware of Defendants' unfair and deceptive policies *before she purchased the Laundry Cards*." (emphasis added)); *id.* ¶ 57.)  The Court declines Plaintiff's invitation to ignore the second element of the definition (*see* Pl.'s Mem. at 6), which is drawn directly from the statute's text, Mass. Gen. Laws ch. 255D, § 1 (defining "gift certificate" as "a writing identified as a gift certificate purchased by a buyer for use by a person other than the buyer . . . .").[7]  *See Simon Prop. Grp., Inc*., 2008 WL 4965853, at *3 ("In construing the statute, the Court must give meaning to all its terms."); *see also id.* at *4 (explaining that the statute's purpose is "to protect consumers from merchants who would accept advance payment from *gift-givers* in return for goods and services to be supplied at a later date, and then fail to supply those goods and services, while keeping the money advanced" (emphasis added)).  As such, Plaintiff's Chapter 93A claim, as premised on a violation of the Gift Certificate Statute, fails.[8]

## C.      Failure to Disclose

Plaintiff next argues that Defendants' failure to disclose their Laundry Card policies is unfair and/or deceptive under Chapter 93A "even without the existence of the [Gift Certificate Statute]."  (Pl.'s Mem. at 8; *see also* FAC ¶ 13 ("LaundroMax does not reveal the non-refundability of these remainder balances until after a customer has already committed to purchasing a Laundry Card.").)  Defendants contend that this theory of liability fails because there are "no non-

---

[7]  The Court also observes that the Code of Federal Regulations excludes a card that is "reloadable and not marketed or labeled as a gift card or gift certificate" from its definition of a gift certificate.  12 C.F.R. § 205.20(b)(2).

[8]  "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'"  *Tomasella*, 962 F.3d at 71 (quoting *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998)).  Nevertheless, "the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law."  *Id.* (quoting *Arthur D. Little, Inc.*, 147 F.3d at 54 (alteration in the original)).

conclusory allegations in the FAC that can support a claim that Defendants committed unfair or deceptive acts. . . ."  (Defs.' Mem. at 9.)  Defendants also note that they have been "unable to find any case applying Massachusetts law in which the failure to disclose a refund policy in advance of purchase was held to be a violation of Ch. 93A, or otherwise found to be deceptive, other than those cases in which there was a separate statute or regulation that mandated a refund and/or the disclosure of the seller's refund policy."  (Defs.' Mem. at 10.)

Failing to disclose material information can be unfair or deceptive under Chapter 93A in certain circumstances.  *E.g.*, *V.S.H. Realty, Inc.*, 757 F.2d at 416–18 (concluding district court erred in dismissing Chapter 93A claim where plaintiff alleged defendant failed to disclose potential oil leaks to property buyer); *Awalt v. Gen. Motors, LLC*, No. 21-CV-10111 (GAO), 2023 WL 2743294, at *2 (D. Mass. Mar. 31, 2023) (finding plaintiff adequately pled Chapter 93A claim against car company that "failed to disclose a serious safety defect which would have influenced him not to enter the transaction" (citing 940 Mass. Code Regs 3.16)).  While the parties agree that "Massachusetts courts [have] found the failure to disclose a refund policy was a violation of Ch. 93A . . . [where] there was an independent statutory obligation to disclose the refund policy" (Defs.' Mem. at 10–11 (citing *Casavant v. Norwegian Cruise Line, Ltd.*, 952 N.E.2d 908, 912 (Mass. 2011)); *see also* Pl.'s Mem. at 8 (same)); *see also Searle*, 618 F. Supp. 3d at 15 (quoting 940 Mass. Code Regs. 3.16(3)),[9] nondisclosure need not violate a specific disclosure requirement—such as the Gift Certificate Statute—for it to be deceptive or unfair under Chapter 93A.  *See V.S.H. Realty, Inc.*, 757 F.2d at 417 ("We are not convinced, however, that V.S.H. needs to allege more than a failure to disclose a material fact to state a cause of action under [C]hapter

_____

[9] Plaintiff's argument that Defendants' non-disclosure was unfair or deceptive because it failed to comport with the requirements of the Gift Certificate Statute fails for the reasons discussed above.  *See supra* at 9–11.

93A."); *see also* 940 Mass. Code Regs. 3.16(2) (providing that failure "to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction" may give rise to liability under Chapter 93A); *Anoush Cab, Inc. v. Uber Techs., Inc*., 8 F.4th 1, 16 (1st Cir. 2021) ("To prove that a covered party has engaged in an unfair or deceptive act or practice, it is neither necessary nor sufficient that a particular act or practice violate common or statutory law." (internal quotation marks and citation omitted)).

The First Circuit, looking at the relevant FTC guidance, recently explained that nondisclosures or omissions could be deemed deceptive for purposes of Chapter 93A in the following circumstances: "(1) to tell only half the truth, and to omit the rest (e.g., where a seller fails to disclose qualifying information necessary to prevent one of his affirmative statements from creating a misleading impression); and (2) to simply remain silent, if [the seller] does so under circumstances that constitute an implied but false representation (e.g., where a misleading impression arise[s] from the physical appearance of the product, or from the circumstances of a specific transaction, or . . . based on ordinary consumer expectations as to the irreducible minimum performance standards of a particular class of good)." *Tomasella*, 962 F.3d at 72 (internal quotation marks and citation omitted); *see also Aspinall v. Philip Morris Cos., Inc*., No. 98-6002-H, 2005 WL 3629358, at *2 (Mass. Super. Ct. Nov. 22, 2005) ("The criticized advertising may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information." (citation omitted)).

The Court finds that the FAC fails to sufficiently allege that Defendants' Laundry Card policies were deceptive under Chapter 93A. Plaintiff has not plausibly alleged that Defendants told a half-truth or remained silent in circumstances that gave rise to an implied false impression. *See Tomasella*, 962 F.3d at 72. The FAC contains no allegations concerning affirmative statements

13

made by Defendants except for a single, extremely general quote from LaundroMax's website. (*See* FAC ¶ 27 ("Defendants' advertisements claim that 'Laundromax has completely transformed the laundry experience for discerning customers looking for efficiency, savings and superior customer service.'").) Thus, the FAC fails to allege that the disclosure of the no-refund policy was necessary "to prevent one of [Defendants'] affirmative statements from creating a misleading impression." *Tomasella*, 962 F.3d at 72. *Cf. Commonwealth v. Exxon Mobil Corp.*, No. 1984-CV-03333-BLS1, 2021 WL 3493456, at *12 (Mass. Super. Ct. June 22, 2021) ("According to the Commonwealth, Exxon is not merely staying silent about the subject, but is actually (mis)representing that its products reduce greenhouse gas emissions. This is not a prior consumer misconception, it is a misconception allegedly created by Exxon." (internal quotation marks omitted) (citing *Tomasella*, 962 F.3d at 73)). And while the FAC alleges that Plaintiff "was not aware of Defendants' unfair and deceptive policies before she purchased the Laundry Cards" (FAC ¶ 32), there are no allegations concerning customers' expectations or other facts indicating that Defendants' omissions constituted "an implied but false representation."[10] *Tomasella*, 962 F.3d at 72.

However, while Plaintiff has not plausibly alleged that Defendants' non-disclosures were deceptive under Chapter 93A, the Court finds that she *has* plausibly alleged a Chapter 93A violation based on unfairness.[11] *See Tomasella*, 962 F.3d at 79 ("An act or practice may be 'unfair'

---

[10] The Court declines to consider Plaintiff's contention that "[n]o reasonable person would expect that when adding money to a Laundry Card, she would not be able to use the entire amount to do her laundry" (Pl.'s Mem. at 8) because no such allegation appears in the FAC.

[11] Although the FAC does not cleanly distinguish between unfairness and deception, and even seems to use the terms interchangeably at points (*see, e.g.*, FAC ¶ 52), the Court construes the FAC as alleging that Defendants' acts and practices are both unfair and deceptive. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (explaining that, on a motion to dismiss under FRCP 12(b)(6), the court must draw all reasonable inferences in the plaintiff's favor).

within the statutory meaning [of Chapter 93A] without being deceptive or fraudulent." (citation

omitted)). As discussed, for her unfairness claim to succeed, Plaintiff must allege that Defendants'

conduct "(1) [falls] within the penumbra of a common law, statutory, or other established concept

of unfairness; (2) [is] immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial

injury to [consumers,] competitors or other business people." *Id.* (quoting *Heller Fin. v. Ins. Co.

of N. Am.*, 573 N.E.2d 8, 12–13 (Mass. 1991)). Critically, for an act or practice "to fall within the

penumbra of a statute's concept of unfairness, it need not actually violate the statute." *Cooper v.

Charter Commc'ns Ents. I, LLC*, 760 F.3d 103, 111 (1st Cir. 2014). "Otherwise, there would have

been no need for the Massachusetts Supreme Judicial Court to refer to penumbras." *Id.* Thus, the

First Circuit found that the plaintiff in *Cooper* plausibly made out a Chapter 93A unfairness claim

based on the defendant's failure to provide credits even though "no regulation literally required . .

. [the defendant] to provide credits to consumers" because there *was* a regulation that required the

defendant "to promise [to provide credits] in specified circumstances." *Id.* at 112 ("Actually

providing a credit is certainly within at least the penumbra of the statutory mandate that Charter

promise to provide credits.").[12]

---

[12] In *Cooper*, customers sued a cable company and its parent company under Chapter 93A, claiming that the defendants "violated contractual, statutory, and common law duties by failing to provide credits to its customers for their loss of cable, internet, and telephone service during [a snowstorm]." 760 F.3d at 104. A separate Massachusetts statute required cable providers to promise to provide credits or rebates to customers in the event of certain service disruptions. *Id.* The First Circuit found that the plaintiffs had plausibly stated a claim under Chapter 93A even though the credit statute imposed only an implied contractual obligation and did not "literally require[]" the defendants to provide credits to consumers. *Id.* at 111–12. In reaching its decision, the panel looked to *Casavant v. Norwegian Cruise Line Ltd.*, in which the Massachusetts Supreme Judicial Court found that a cruise line's failure to comply with state regulations requiring "sellers of travel services to disclose refund policies to consumers" amounted to a clear violation of Chapter 93A, despite *Casavant*'s statutory obligation being more explicit than that of the statute at issue in *Cooper*. *Id.* at 111–12 (citing 952 N.E.2d 908, 912–13 (Mass. 2011)).

In the present case, Plaintiff has plausibly alleged that Defendants' non-disclosure of their Laundry Card policies falls "within the penumbra of a common law, statutory, or other established concept of unfairness[.]"   *Tomasella*, 962 F.3d at 79 (internal quotation marks and citation omitted).   Plaintiff asserts that Defendants intentionally set the LaundroMax card refill station prepayment amounts and costs of using their machines at rates that are guaranteed to produce a remainder balance on the Laundry Cards that Defendants then keep as a result of an undisclosed no-refund policy.  (FAC ¶¶ 7–14.)  The non-refundability of these balances, Plaintiff claims, is not revealed to consumers before the point of sale, if at all.  (*Id.* ¶¶ 13, 17.)  Even if there is no statute or regulation that specifically requires purveyors of reloadable laundry cards to expressly disclose their refund policies, there are certainly statutes, including but not limited to the Gift Certificate Statute, that require disclosure in similar circumstances.   *See also, e.g.*, 940 Mass. Code Regs. 3.13(4) ("It is an unfair and deceptive trade practice . . . [t]o fail to clearly and conspicuously disclose to a buyer, prior to the consummation of a transaction, the exact nature and extent of the seller's refund, return, or cancellation policy[.]").

Plaintiff also alleges that Defendants knowingly created a pricing structure that would lead to inaccessible remainder balances, and that the remainder balances operate as "a hidden fee that is not disclosed to users."  (FAC ¶ 15; *see also id.* ¶ 57.)  "Billing practices that inflate the actual price of a product or service without adding additional value are unfair or deceptive under Chapter 93A."  *Mack v. Cultural Care Inc.*, No. 19-CV-11530 (ADB), 2020 WL 4673522, at *9 (D. Mass. Aug. 12, 2020); *see also Schuster v. Harbor*, 471 F. Supp. 3d 411, 425 (D. Mass. 2020) (denying motion to dismiss Chapter 93A claim where plaintiff alleged that casino "unlawfully and wrongfully exercised dominion and control over [the plaintiff's] money by withholding and otherwise failing to pay coins remaining on slot machine 'cashout' tickets,"  and did not provide

any "instruction[s] on how to redeem the balance" (citations omitted)); *Bellermann v. Fitchburg Gas & Elec. Light Co.*, 18 N.E.3d 1050, 1060 n.10 (Mass. 2014) ("Where a defendant's unfair or deceptive conduct causes customers to receive a product or service worth less than the one for which the customers paid, the customers may pursue a class action under [Chapter 93A] to recover the amount by which they overpaid."). According to Plaintiff, Defendants, through these practices, "have acquired at least millions of dollars in revenue to which they are not entitled" (FAC ¶ 30). *See Walsh*, 821 F.3d at 160 ("To rise to the level of an unfair act or practice, the defendant's conduct must generally be of an egregious, non-negligent nature." (internal quotation marks and citation omitted)). Taken together, these allegations plausibly plead a claim of unfair acts and practices in violation of Chapter 93A.

## II.   Plaintiff's Section 349 Claim Under New York Law

Plaintiff also asserts a claim against Defendants under New York's consumer protection statute, New York General Business Law Section 349. (FAC ¶¶ 69–78.) Plaintiff specifically alleges that Defendants "committed unfair or deceptive acts and practices by making false representations in the marketing of Defendants' Laundry Card." (*Id.* ¶ 71.) Plaintiff also alleges that "Defendants' conduct . . . fails to comport with New York's General Business Law § 396-i(c)(3), in that Defendants do not clearly and conspicuously disclose [their] deceptive and unfair policies . . . ." (*Id.* ¶ 74.) Defendants contend that Plaintiff's Section 349 claim fails because, *inter alia*, "the FAC does not allege any deception of customers that occurred in New York, as required to allege a violation of [Section] 349." (Defs.' Mem. at 12.)

Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state[.]" N.Y. Gen. Bus. Law § 349(a); *see also Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew*

*Bender & Co., Inc.*, 37 N.Y.3d 169, 176 (N.Y. 2021).   Two different tests have emerged to determine whether allegations satisfy the statute's territoriality requirement.   *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013).   The first "focus[es] on where the deception of the plaintiff occurs and require[s], for example, that a plaintiff actually view a deceptive statement while in New York." *Id.* at 123 (citing *Kaufman v. Sirius XM Radio, Inc.*, 474 Fed. App'x 5 (2d Cir. 2012) (summ. order)).   The second "focus[es] on where the underlying deceptive 'transaction' takes place, regardless of the plaintiff's location or where the plaintiff is deceived." *Id.* (citing *Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580, 587 (N.Y. App. Div. 2010)).   Thus, an out-of-state plaintiff who successfully alleges that a deceptive *transaction* occurred in New York may bring a claim under Section 349 "regardless of the plaintiff's location or where the plaintiff is deceived." *Id.* at 123–24; *see also Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2020 WL 6564755, at *13 (S.D.N.Y. Nov. 9, 2020) (quoting *Cruz*, 720 F.3d at 122).

    Plaintiff's Section 349 claim fails under both frameworks.   First, there are no allegations that Plaintiff was deceived "while in New York," or even that she has ever been to New York.   Accordingly, the FAC fails to establish Plaintiff's statutory standing to assert a Section 349 claim based on where the alleged deception occurred.   Second, Plaintiff has not sufficiently pled that a deceptive transaction, or part of a deceptive transaction, took place in New York.   For example, Plaintiff does not allege that she paid for her Laundry Card through an electronic or credit card transaction that was only accepted in New York, or that her payments were processed in New York.[13]  *See Fishon*, 2020 WL 6564755, at *14 (dismissing Section 349 claim where plaintiff did

---

[13] The Court also notes that neither of the two Yelp reviews included in the FAC support a territorial nexus to New York.  (*See* FAC ¶¶ 28–29.)  One review concerns a LaundroMax location

not allege that she purchased the product at issue in New York or that "she paid through an electronic or credit card transaction that was only accepted in New York"). Thus, the FAC fails to satisfy the transaction-based framework as well.

The New York choice-of-law provision on Defendants' website (*see* FAC ¶ 77; *see also* Pl.'s Mem. at 10–11) is insufficient to confer statutory standing to sue under Section 349. "[E]ven though choice-of-law and forum-selection provisions may be indicative of a transaction in New York when other factors are present, the mere fact that parties agreed to be bound by New York law and to resolve their disputes in courts in New York does not, in itself, provide any indication as to where the transaction occurred." *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547–48 (S.D.N.Y. 2014). Moreover, the choice-of-law provision here specifically applies to "[a]ny *claim relating to Company's website*." (FAC ¶ 77 (emphasis added).) Plaintiff does not allege that she purchased or refilled her Laundry Card using the website or that she visited Defendants' website prior to purchasing a Laundry Card, thereby rendering the choice of law provision wholly inapplicable to her claims.

Likewise, "[t]he allegation that [Defendants'] principal place of business is in New York is plainly insufficient on its own to support application of New York's consumer protection laws." *Fishon*, 2020 WL 6564755, at *13–14 (finding plaintiff had not sufficiently alleged "that any part of her transaction took place in New York" where defendant was a New York-based corporation that used New York choice-of-law and choice-of-forum clauses). *Cf. Cruz*, 720 F.3d at 123–24 (concluding plaintiff sufficiently alleged "a series of allegedly deceptive transactions that occurred in New York and that implicat[ed] the interests of New York" where defendant was paid in New

---

in North Providence, Rhode Island, and the other a LaundroMax location in Warwick, Rhode Island. (*See id.* at 5 nn.2–3.)

York, refused to disburse funds from customer accounts until it received a specific form at its New York office, required all customer communications to be sent to its New York office, and had a New York choice-of-law and forum selection clause in its contracts).  And Plaintiff's conclusory argument that "[a]ll of the relevant conduct at issue originates from Defendants' Queens based principal place of business" fairs no better.  (*See* Pl.'s Mem. at 11.) "[A]llegations that the emanation of [Defendants'] deceptive marketing strategy from New York, [its] principal place of business, are insufficient for the transactions to be covered by the statutory provision[s] here." *Nguyen v. Barnes & Noble Inc.*, No. SACV 12-812 (JLS), 2015 WL 12766050, at *3 (C.D. Cal. Nov. 23, 2015) (internal quotation marks and citation omitted) (analyzing Section 349 claim).

In sum, the facts alleged in the FAC "neither individually nor cumulatively establish that some part of the underlying transaction occurred in New York State." *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020).  Without a connection between her specific transaction with Defendants and New York, Plaintiff has no statutory standing to bring a claim under Section 349. *See Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2021 WL 2941820, at *4 (S.D.N.Y. July 12, 2021).  As such, Count Three, Plaintiff's Section 349 claim, is dismissed.[14]

## III. Plaintiff's Unjust Enrichment Claim

Plaintiff asserts that Defendants have been unjustly enriched by retaining the revenues derived from the remainder balances on customers' Laundry Cards.  (FAC ¶ 67.) Defendants argue that Plaintiff's claim for unjust enrichment should be dismissed because it is duplicative of her

---

[14] Because Plaintiff lacks statutory standing, the Court does not address Defendants' other arguments concerning the Section 349 claim.  (*See* Defs.' Mem. 16–18.)

Chapter 93A and Section 349 claims, and because there "are no non-conclusory allegations in the FAC that could establish an unjust enrichment claim against Defendants." (Defs.' Mem. at 20.)

"Under New York law,[15] an unjust enrichment claim requires a showing: 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'"[16] *Coughlan v. Jachney*, 473 F. Supp. 3d 166, 204 (E.D.N.Y. 2020) (quoting *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012)); *see also, e.g.*, *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (stating that a claim for unjust enrichment under New York law requires "the plaintiff to establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution").

___

[15] The Court notes that although Plaintiff did not specify in the FAC whether the unjust enrichment claim is being brought under New York or Massachusetts law, both parties primarily look to New York law in their legal memoranda. (*See* Pl.'s Mem. at 15–17; Defs.' Mem. at 20–23.) Accordingly, the Court will apply New York law to Plaintiff's claim for unjust enrichment. *See AIG Europe (Netherlands), N.V. v. UPS Supply Chain Sols., Inc.*, 765 F. Supp. 2d 472, 479 (S.D.N.Y. 2011) ("[W]here the parties' 'briefs assume that New York law controls, . . . such implied consent . . . is sufficient to establish choice of law.'" (quoting *DeBlasio v. Merrill Lynch & Co.*, No. 07-Civ-318 (RJS), 2009 WL 2242605, at *19 n.14 (S.D.N.Y. July 27, 2009))); *see also Tehran–Berkeley Civ. & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) ("The parties' briefs, however, rely on New York law. Under the principle that implied consent to use a forum's law is sufficient to establish choice of law . . . we will apply New York law to this case" (citation omitted)). The Court also observes that "the elements of unjust enrichment are substantially similar in New York and Massachusetts." *Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec.*, 450 F. Supp. 3d 20, 34 (D. Mass. 2020) (citations omitted); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 268 (S.D.N.Y. 2019) (explaining that "[t]he elements required to plead an unjust enrichment claim are generally the same under the laws of each of the relevant states[,]" which included both New York and Massachusetts).

[16] Similarly, under Massachusetts law, "[a] plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, 'a quality that turns on the reasonable expectations of the parties." *Metro. Life Ins. Co. v. Cotter*, 984 N.E.2d 835, 850 (Mass. 2013) (quoting *Glob. Invs. Agent Corp. v. Nat'l Fire Ins. Co.*, 927 N.E.2d 480, 494 (Mass. App. Ct. 2010)).

The New York Court of Appeals has cautioned that the doctrine of unjust enrichment "is a narrow one; it is 'not a catchall cause of action to be used when others fail.'"  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 312 (N.Y. 2018) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).  Further, unjust enrichment:

> is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled[.]

*Corsello*, 967 N.E.2d at 1185 (citations omitted).  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."[17]  *Id.*

Here, Plaintiff's unjust enrichment claim is duplicative of her claims under the Massachusetts and New York consumer protection laws.  Plaintiff asserts that Defendants' alleged unjust enrichment stems from their "retaining the revenues derived from Plaintiff's and Class members' Laundry Card balance remainders[,]" and failing to "disclose that their prepayment and refund policies were structured in way [*sic*] that maximized the balance remainders and then made these balances impossible to access by not providing refunds."  (FAC ¶ 67.)  These allegations comprise the very same conduct that underlies Plaintiff's statutory

---

[17] Similarly, under Massachusetts law, "a plaintiff is prohibited . . . from bringing a claim for unjust enrichment where an adequate remedy at law exists—regardless of the viability of that theory or whether it sounds in contract, fraud, or tort."  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 419 (S.D.N.Y. 2017) (citations omitted), *modified on recons.*, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *see also Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) ("A claim of unjust enrichment, however, is not available to a party with an adequate remedy at law. [The] [p]laintiff's negligence and [C]hapter 93A claims thus preclude a claim for unjust enrichment. The disposition of those claims is irrelevant. Their mere availability is a bar to a claim of unjust enrichment." (internal quotation marks and citations omitted)); *Tomasella*, 962 F.3d at 82–83 ("Specifically, '[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment.'" (quoting *Shaulis*, 865 F.3d at 16)).

claims.  (*See id.* ¶¶ 57, 75.)  *See also Wedra v. Cree, Inc.*, No. 19-CV-3162 (VB), 2020 WL 1322887, at *11 (S.D.N.Y. Mar. 20, 2020) (dismissing unjust enrichment claim as duplicative where the factual allegations underlying the claim were the same as those used to support plaintiff's statutory, contract, and tort law claims).  "Thus, '[t]o the extent [Plaintiff's other] claims succeed, the unjust enrichment claim is duplicative; if Plaintiff['s] other claims are defective, an unjust enrichment claim cannot remedy the defects.'"[18]  *Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526 (KBF), 2017 WL 213815, at *7 (S.D.N.Y. Jan. 18, 2017) (quoting *Corsello*, 967 N.E.2d at 1185).

Plaintiff argues that she has "properly ple[d] the unjust enrichment claim in the alternative under [FRCP] 8(a)(3)."  (Pl.'s Mem. at 15.)  It is "certainly true, as Plaintiff argues, that [she] may plead unjust enrichment in the alternative to [her] other claims."  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (citing *Burton v. Iyogi, Inc.*, No. 13-CV-6926 (DAB), 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015)).  "But it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  *Id.* (citations omitted).  Plaintiff's attempt to distinguish her claims based on the type of relief she seeks is unavailing.  (*See* Pl.'s Mem. at 17 ("Plaintiff has properly pleaded a critical distinction between the statutory violations and unjust enrichment relief: unjust enrichment provides for restitution of ill-gotten gains while the statutory violations provide for

---

[18] Likewise, under Massachusetts law, "[Plaintiff's] unjust enrichment claims must be dismissed because an adequate remedy at law [is] . . . available to her through Chapter 93A."  *Mack v. Cultural Care Inc.,* No. 19-CV-11530 (ADB), 2020 WL 4673522, at *9 (D. Mass. Aug. 12, 2020) (quoting *Tomasella*, 962 F.3d at 84); *see also, e.g.*, *Tomasella*, 962 F.3d at 83–84 (affirming dismissal of plaintiff's unjust enrichment claim because Chapter 93A provided "an adequate remedy at law," even though plaintiff's Chapter 93A claim was dismissed for failure to state a claim for relief).

statutory damages.").)[19]   The critical inquiry is whether the *factual allegations* supporting each claim are the same, *see, e.g.*, *Wedra*, 2020 WL 1322887, at *11, not whether the claims provide identical relief.   Furthermore, as discussed above, the fact that Plaintiff's Section 349 claim is insufficiently pled does not mean that her unjust enrichment claim based on the same allegations survives.   *See Corsello*, 967 N.E.2d at 1185.   Accordingly, the Court dismisses Count Two, Plaintiff's unjust enrichment claim.   *See, e.g.*, *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) ("Because plaintiff's unjust enrichment claim under New York law is based on the same allegations as her claims of violations of [New York General Business Law Sections] 349 and 350 and breach of express warranty under New York law, and because plaintiff has not shown how her unjust enrichment claim differs from her other New York claims, the Court dismisses plaintiff's unjust enrichment claim as duplicative of her other New York claims.").

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part.   The Court grants Defendants' Motion to Dismiss as to Plaintiff's Section 349 and unjust enrichment claims.   Plaintiff's Chapter 93A claim shall be limited to the unfairness claim as discussed above.   *See supra* at 14–17.   Plaintiff shall file a Second Amended Complaint

---

[19] Plaintiff cites no case law in support of her argument that such a distinction is meaningful in this context.   (*See* Pl.'s Mem. at 17.)   To the contrary, courts routinely dismiss unjust enrichment claims as duplicative of claims for statutory damages.   *See, e.g.*, *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 308, 316–17 (S.D.N.Y. 2022) (collecting cases).   Moreover, Plaintiff's argument is undermined by the FAC, which states that, under Chapter 93A, "Plaintiff and each member of the Classes may recover an award of *actual damages* or twenty-five dollars, whichever is greater."   (FAC ¶ 59 (emphasis added).)

("SAC"), striking and modifying the pleadings consistent with this Order, within thirty (30) days of the issuance of the Order.[20]

Additionally, as noted above, *see supra* at 4 note 3, the Court *sua sponte* questions whether Plaintiff's claim under Massachusetts law alone is sufficient to meet CAFA's amount in controversy requirement and thus whether subject matter jurisdiction exists in this case. Plaintiff's SAC shall include updated allegations concerning the Court's subject matter jurisdiction to reflect the dismissal of her New York law and unjust enrichment claims. The claim under Massachusetts law may proceed only if Plaintiff sufficiently alleges the jurisdictional amount.

Moreover, within sixty (60) days of the issuance of this Order, the parties shall show cause, in a letter of up to five pages, as to: (1) whether the Court retains subject matter jurisdiction over this action; and (2) if subject matter jurisdiction exists, why the Court should not transfer this case to the District of Massachusetts under 28 U.S.C. § 1404(a) in light of the Court's dismissal of Plaintiff's New York law claims.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: January 29, 2024
Brooklyn, New York

---

[20] The Court denies Plaintiff's request to be permitted to amend the complaint for any other purpose. (*See* Pl.'s Mem. at 17 ("To the extent the Court grants any aspect of Defendants' Motion, Plaintiff should be permitted leave to amend.").) Plaintiff was already given the opportunity to amend her complaint prior to the briefing of Defendants' Motion to Dismiss, *see supra* at 5; she is not entitled to keep amending the complaint, especially when doing so would be futile. *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Leave to amend may be denied if the proposed amendment would be futile."); *Simon v. Keyspan Corp.*, 785 F. Supp. 2d 120, 141 (S.D.N.Y. 2011) (denying leave to amend as futile where "[t]here [were] no allegations that plaintiff could add that could possibly rescue his claims"), *aff'd*, 694 F.3d 196 (2d Cir. 2012).